Good morning, your honors. My name is Olivia Perez. May it please the court. I'm a 3L law student at Gonzaga University School of Law, and I'm here under certified supervision with Brooks Holland, who is the attorney on record for Mr. Bartels. Today I'm here on behalf of Mr. Bartels, and right now I would like to reserve one minute for rebuttal. Mr. Bartels does not challenge his guilty plea to the charges, nor does he challenge most of the restitution orders for his victim. Bartels takes responsibilities for his actions and requests that this court give finality to this matter, but before there could be closure, the restitution order must comply with the statute. The district court observed the presence of this issue at the time that Bartels took his sentencing, which you will find on the record in ER 147. There the court said, and quote, and I understand that this is still an issue that may be at play at the Ninth Circuit, we will see, end quote. And so, your honor, today Bartels respectfully requests that the court review this case, vacate the restitution order, and remand to district court for an amended restitution order. First, the waiver of appeal included in Bartels' plea agreement does not foreclose his right to appeal the disputed restitution issue here. While it is true that a defendant may waive their constitutional rights, such as the right to appeal as part of plea negotiations, this very court has maintained that a defendant must be given a special notice with reasonable estimates of the amount of restitution that he will be ordered to pay at the time that he agrees to the government's offer. Ninth Circuit case law makes it clear that a special notice requirement for a restitution judgment is necessary in order for a waiver of appeal to be knowing. A defendant cannot fairly anticipate what claims he is waiving if he does not have notice. And so, here at the time that Bartels accepted the government's offer, he was not given notice that the restitution order could include the lost wages of the victim's mother, nor was he advised during the district court's plea hearing that he would be asked to pay for the mother's lost wages. Bartels stands in the same position as the defendant in cases like Tosie, where the defendant did not object to the lack of notice, and yet this court did not enforce the waiver of appeal because of the absence of a notice. The government argues that the case is already closed and we agree in most respects, but the government has the burden of giving notice. As such, Bartels waiver of appeal is invalid. And so, as to the merits of the case, the appeal requires that the court find that the district court improperly awarded a 3,264 restitution order to the minor victims for her lost income claim. Bartels only challenges the specific issue here relating to the mother's lost income for her trauma. The government takes the position that these lost wages on behalf of on behalf of the victim because the victim depends on her mother's wages, but their position is that their position extends beyond what the restitution, what the statute, excuse me, what the statute defines as victims. The statute authorizes a parent to... The statute says for purposes of section, the term victim means the individual harmed as a result of a commission of a crime under this chapter, including in the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or representative of the victim's estate, another family member, or any other person. So why doesn't that cover this situation? Right, and so the issue here is that the statute may be unclear. It doesn't cover here particularly because case law from this court has decided that when the mother is incurring the losses, she has to be acting on behalf of the victim. Okay, so you saying decided that as opposed to the dicta in TOSI. Right, and we're asking the court to look at TOSI as persuasive case law, particularly... It may be, but it's certainly not binding on us. Right, right, and so what happened in TOSI is that the court did not apply that because they did not have to ask the facts of the case. However, if we take the court's interpretation in TOSI and apply it here, we will see that the court took a common-sense approach, and that's why we're asking the court to take that same approach in TOSI here. Well, it was such common sense that the Sixth Circuit went the other way, right? Is that because there's no common sense in the Sixth Circuit or because the Sixth Circuit, unlike TOSI, actually went into the legislative history and found it was very expansive. Right, and so what we're seeing is that courts are having trouble interpreting. There's no clear, decisive way of defining of how to apply this section of the statute, and so that's why we're asking the court today to interpret the statute in this particular section of the statute to find that for facts like these, where the mother is not acting on behalf of the victim, that the statute does not cover her restitution claim. Is there some way to distinguish the Sixth Circuit Evers case from the case in front of us? Is there some way to distinguish? Yes, we just heard that Sixth Circuit is a case against you. Is there some way to distinguish that case? Well, not to my knowledge right now, Your Honor, but we do want to ask the court to apply TOSI because TOSI is a Ninth Circuit case. Well, as you know already, and as we've just done the back and forth, it's not binding on us. Judge Berzon was very careful to say, well, this is what I think, but I'm not going to decide the question. Right. And we got a wide range of opinions on the Ninth Circuit on a wide range of issues. Right. Right, Your Honor. I'll tell you, in the Sixth Circuit case Evers, they have a footnote and say this might be different if the language of, use the term, I think, if the guardian assumes the rights of the victim. And that, my understanding is that the statute has in fact been amended to use that exact wording now. So we could view that amendment as a change and narrowing it, or we can view that amendment as a clarification that it's always meant to have the more narrow scope. Do you have an argument as to how it should be read and why? Yes, Your Honor. So with the language of the statute, the government is seeking a broad approach to it. However, this, so the government will argue that the next, the nexus between the defendant's actions and the mother's loss is enough. So, but we're arguing that causal connection is not enough. And so we're asking for a narrow interpretation because the mother has to be acting on behalf of the dependent child. And on the record, we are not told how the mother was acting on behalf of the child at the time that she had to take time off of work and at the time that she was incurring those losses. Were the expenses incurred by the mother approximately caused? Yes. So, so the language then of the statute says, any other losses suffered by the victim is approximate cause of the offense. And we know that the mother is defined as a victim. So how do you get out from under, she is a victim in the odd, sort of conceptual idea of the statute. And you just said that which this, these expenses were incurred as approximate cause. So how do we get to your position with those two things being true? Because proximate cause is not sufficient alone, Your Honor. Yes, Mr. Bartel's actions caused her to miss work because of her trauma. However, she had to have been acting on behalf of the victim. And that language is not in the statute. Do you concede that? Yes. And that's why we're asking the court to rely on case law to find that this restitution order does not apply because the nexus is not alone sufficient for this restitution claim. Okay. And I will reserve my minute for rebuttal. Good morning, Your Honors. May it please the court, Jonas Lerman for the United States. So what about the question put by Judge Sung? The statute was amended in a way that seemingly would preclude this recovery if it, if the new statute were in place. The question is, was that amendment intended to narrow so that you would prevail because the statute was broader and applicable period? Or was that statute amendment intended just to clarify what Congress always intended? So a couple of responses to that, Judge Rakoff. The first is I have to disagree with the premise that we would lose even under the new statute. We would win under the new statute for reasons I can go into. But we know that this was a substantive change to the statute in several ways. Among others, it set a $3,000 something dollar floor for restitution recovery. It also did make a tweak to the definition of victim. And I think the definition of victim is substantively different from the version of the statute that we all agree applies here. The including language that you read is no longer in the statute. I mean, it's, it's, it's worded differently. It defines victim differently. The statute... We didn't go into the legislative history and I'll confess I haven't looked at the legislative history of the current version because again, the parties agree that it's the version that was in place from 96 to 2018 that governs here. If it's assuming arguendo that there was a new version of the statute that was in place but was not plainly expressed in the previous version, that would be a strong indication of how that earlier version should be interpreted. Yes? I don't know. I mean, it's hard to say hypothetically. And I don't think if that were the case, I don't talking about 2259 being phrased in generous terms in order to compensate the victims of sexual abuse for the care required to address the long-term effects of their abuse. You know, that's not just about a parent standing in the shoes of a victim. Yeah. If we, assuming we're not bound by any prior precedent on the question here presented, and I don't think we are, then assuming my hypothetical that the conference committee said, here's what we always intended in the earlier version, why wouldn't that be highly important to our determination? I think it could be a tool of interpretation at looking at the statute, certainly. And conversely, if the conference committee report said, we originally wrote a very broad statute intended to cover all I agree. So don't we need to know what the legislative history is? No, because again, even under the narrow interpretation of the statute that governs in TOTSI or even under today's version of the statute, these losses would be compensable. And also, just so it's not lost under the narrow version that the court happened here. The district court ordered this $3,264 in restitution for lost income. That was lost income that directly affected the minor victim. It resulted directly from Mr. Bartel's crime. That's not in dispute. The defense is not disputing that this 10-year-old girl depended entirely on her mother to live. They're not disputing causation. None of the facts are in dispute. My colleague, Ms. Perez, said that we don't know what the mother was up to at this time. That's not true. If you look at the declaration that she filed, she said, quote, I lost wages due to having to tend to my daughter, accompany my daughter to interviews, and participate as needed in the investigation immediately following the discovery of my daughter's abuse and So at least $1,728 of the $3,264 was attributable to those activities. At least the $1,728. As for the other $1,586, the mother did say that when she refused to work, she was too upset to function. But the record's also clear that during that period, she was still engaged in these quintessential caretaking activities, the kind that the prior version of the statute that governs here and the current version of the statute all contemplate. At sentencing, she explained that her daughter suffered from PTSD. The daughter was in intense trauma therapy and will need continuing care for many years to come. She suffered from night terrors that have worsened over time. She's endured suicidal thoughts and attempts, plus related hospitalization. That's at ER 131 to 133. So any claim under this narrow reading that this mother lost income solely in her individual capacity just can't be squared with the uncontroverted evidence that we have here. The evidence, again, shows that the mother was caring for and providing for her young daughter. This is a single mother. Her income is the child's income. And I would point the court to the judgment here. The judgment did not award restitution to the mother. The judgment at ER 12 awards it to MV1, care of parent. This was a loss suffered by the minor victim. And the award of restitution went to the minor victim, care of her parent. So, again, even under that narrower reading from Tosse, this was a loss suffered by the minor victim. The mother was engaged in caretaking activities. She was acting on behalf of the minor victim. If I can ask you about the second part of the recovery, the recovery of the days of work that she missed that were sporadic, not the first clump where, as you read, there's a pretty good argument that she was taking the time off simply to care for the daughter. But the others, she went to work, but she just couldn't work because she was too upset. So I'm focusing on that. How helpful to you is the Sixth Circuit case? I think it's helpful for the broad proposition, and this is Evers, that a parent's lost income approximately caused by a defendant's crime is compensable. The point of my question you might be anticipating, in the Sixth Circuit case, those expenses were incurred because she's attending the hearings. Right, and that was going to be my next sentence. That certainly looks as though she's doing that for the victim. That's not just because she's psychologically hurt and needs help. So that's why I'm focusing on the second part rather than on the first. And I was going to get there. I think the fact that the parent in Evers was attending court hearings, that distinguishes it somewhat from this case. But again, the broader proposition, and this is contrary to the defense's argument here, that a parent's lost income just isn't compensable. That can't be squared with SOSI. I mean, at SOSI, the holding of SOSI, we've been talking about the dicta, but the holding of SOSI was that $32,000 in travel expenses to go see a teenager at boarding school, that the parent's $32,000 in travel expenses, that that was compensable. That was a lost... Because certain care was ordered by a provider. Right. There was a psychologist, I think, who said this victim needs to be around a caring family member. But the bottom line point was that those were costs incurred by the victim, this court said. That was the holding. And the same analysis, I think, applies here, again, under either of the readings of the statute that Judge Berzon offered up in that dicta in SOSI. But I don't want to lose track of the waiver point. Candidly, I don't think it's our strongest point of the two. I think we have an easier time on the merits. But I do want to stress the differences between the waiver here and the waiver in SOSI and why we think SOSI is distinguishable. The plea agreement here really is not like the plea agreement in SOSI. Mr. Bartels acknowledged at a very long restitution section of his plea agreement that the defendant will be responsible for any order by the district court requiring the payment of restitution for such losses. That's at ER 22. And then, again, in the waiver provision, paragraph 17, at ER 26 to 27, he, again, expressly waives the right to challenge any restitution order. The defense has not cited any case where a comparable waiver was found to be unenforceable. And if you look at the waiver language in SOSI, it was really just a general waiver and a plea agreement. And there was no promise to pay any restitution order by the district court like we have here. The TASI court also said that the parties didn't stipulate as to whether an order for restitution should issue. So this is a different kind of plea agreement, and we would urge the court to enforce this knowing and voluntary appellate waiver, which, just as a footnote, was part of a very, very favorable plea agreement. But, again, you don't have to decide the waiver issue because I think we win on the merits in any event. If the court has no other questions, we would ask that you affirm. The only, I'm not sure it's exactly a question, but the very fact that it was a favorable plea agreement, I think, cuts both ways because what he really wanted to do was get reduced jail time. And so in return for that, he said, all right, I'll agree to any amount of restitution, even if, theoretically, it's a billion dollars. And that would not be really a knowing waiver without some indication of the nature of the restitution evidence that the government would be subsequently presenting. But he would go along with that because anything to avoid jail. So I'm not sure that really is still, I agree with the point you made earlier that this is your lesser good argument, so to speak. Well, I just think I would urge the court to look at the language in the plea agreement. It is, you know, it is encompassing, it is detailed, and that distinguishes it from the Tossie language. And again, it's the defense's burden to show that this was not a knowing and voluntary waiver. They haven't pointed to any case where language like this was found to be unenforceable. I realize you're over time, but a follow-up question to Judge Rakoff's question. What do we know, if anything, about what was on the table or what was known at the time when he agrees to the word any? I mean, you know, oftentimes you have a pretty good idea as to what was on the table. But you don't know just what the restitutional demand might be. Do we have any information on that? I was not trial counsel on this case, but I don't believe that the mother's declaration had been submitted yet. As for the series victims, you know, the other $20,000 or so of restitution, I don't know whether those letters from those law firms had come in. But my recollection is that the mother's declaration came in shortly before sentencing, so I don't think that was in hand at the time of the change of plea. Thank you, Your Honors. Your Honor, we're not arguing the restitution relating to the mother taking her daughter to therapy. That's more like Evers in the Sixth Circuit. That's not challenging. We believe that the mother's loss for wages can be compensable, but causation of the mother's loss for money does not automatically mean that it's a loss to the dependent. As a reminder to the court, federal courts do not have inherent authority to order restitution. They have to follow the language of the statute, and while the language here is unclear, we also would like to remind the court that the amendment clarifies that the parent has to be standing in the shoes of the victim. And here, while she was taking time off for her own therapy, that is not a situation where the mother was standing in the shoes of the victim. So we ask the court to take a common-sense approach and to vacate the restitution order and remand the case for an amended restitution order. Thank you. I thank counsel for their arguments, and especially Ms. Perez. Thank you for arguing as a student.
judges: FLETCHER, SUNG, Rakoff